IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**In The Matter Of The Arbitration Between:**

**Gloria Ware,**

        Claimant,

  v.

**C.D. Peacock,**

        Respondent.

No. 10-cv-02587

Judge George Marovich

Magistrate Judge Nan Nolan

### RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENA

Respondent C.D. Peacock, Inc. (erroneously named as "C.D. Peacock") (hereinafter referred to as "C.D. Peacock"), by and through their attorneys, Littler Mendelson, P.C., hereby submits the following Response in Opposition to Motion to Quash Subpoena filed by Helene Tomasian. As will be explained herein, Ms. Tomasian's Motion to Quash fails in numerous respects, including, but not limited to, (1) her attempts to mislead the Court by omitting critical facts that demonstrate she voluntarily agreed to participate in the arbitration between Gloria Ware (hereinafter referred to as "Ware" or "Claimant") and C.D. Peacock, (2) her misrepresentations to the Court about her own, and her counsel's, knowledge regarding the subject matter and necessity for Ms. Tomasian's deposition in this matter, and (3) her misplaced reliance on case law that is clearly distinguishable from the instant matter. As a result of these, and other defects to be addressed herein, Ms. Tomasian's Motion to Quash Subpoena should be denied with prejudice, C.D. Peacock should be awarded its fees and costs associated with

responding this Motion, and the Court should award C.D. Peacock any and all relief it deems appropriate.

## I. INTRODUCTION

### A. Background

On or about October 27, 2008, Gloria Ware filed a complaint in the United States District Court for the Northern District of Illinois, captioned <u>Ware v. C.D. Peacock, Inc.</u>, 1:08-cv-06145. However, on November 15, 2008, Ware dismissed the action after it was brought to her counsel's attention that Ware had entered into an agreement with C.D. Peacock to arbitrate her claims before the American Arbitration Association ("AAA") or other mutually agreeable arbitration service. (<u>See</u> Arbitration Agreement, attached as Exhibit 1).

On November 19, 2008, Ware filed a Complaint with the AAA against C.D. Peacock alleging claims of discrimination on the basis of her age, race, and color when she was demoted from Store Manager to Assistant Store Manager for C.D. Peacock. (<u>See</u> Exhibit 2: Declaration of Attorney Amanda H. Wright at ¶ 2; hereinafter "Wright Decl. at ¶ ___"). On January 7, 2009, C.D. Peacock timely filed its Answering Statement, and discovery commenced in this action soon after. (<u>Id.</u> at ¶ 3). Discovery was initially scheduled to close on May 29, 2009; on June 15, 2009, following the scheduled close of discovery, C.D. Peacock filed a Motion for Summary Judgment with respect to Ware's claims. (<u>Id.</u> at ¶ 4).

On June 23, 2009, prior to responding to C.D. Peacock's motion, Ware sought, and was granted, a substitution of counsel in this matter. (<u>Id.</u> at ¶ 5). Soon thereafter, on June 29, 2009, Ware requested leave to assert additional claims for damages against C.D. Peacock, which the Arbitrator also allowed over C.D. Peacock's objections. (<u>Id.</u>)

On August 28, 2009, Ware submitted a Response to Respondent's Motion for Summary Judgment. (<u>Id.</u> at ¶ 6). Ware's response included as an exhibit, the Affidavit of Helene

Tomasian, which she cited to approximately twenty-three (23) times.[1] (Id.). On that same date, Ware submitted her Response to Respondent's Statement of Facts, which cited to the Affidavit of Helene Tomasian approximately thirty-four (34) times. Id.

On September 7, 2009, and prior to Respondent filing a Reply In Support of Its Motion for Summary Judgment, Arbitrator Timothy Klenk denied C.D. Peacock's request to maintain its Motion for Summary Judgment based "in large part on an affidavit of Helene Tomasian." (Id. at ¶ 7).

On September 11, 2009, Ms. Tomasian filed an action against C.D. Peacock, Inc. and Jewelcor, Inc., entitled Tomasian v. C. D. Peacock, Inc., et al., No. 1:09-cv-05665 (N.D. Ill. 2009), which is currently pending before District Judge William J. Hibbler. On December 4, 2009, as a result of Ms. Tomasian's refusal to voluntarily dismiss or stay her litigation - despite having signed a binding Arbitration Agreement similar to that of Ms. Ware - C.D. Peacock filed a Motion to Stay and Compel Arbitration. On December 12, 2009, Judge Hibbler granted Ms. Tomasian's request to hold her response in abeyance, so that she may conduct limited discovery to respond to C.D. Peacock's motion. Ms. Tomasian's response to C.D. Peacock's Motion to Stay and Compel Arbitration is due on or before June 11, 2010. (See Exhibit 3: April 21, 2010 Minute Entry by Judge Hibbler).

### B. Ms. Tomasian's Consent To Participate In Discovery In The Instant Arbitration

It is undisputed that Ms. Tomasian voluntarily agreed to be interviewed by Keith Allen, counsel for Ware in this matter, with the knowledge of Ms. Tomasian's counsel, Keith Hunt. Although C.D. Peacock is not privy to all of the correspondence between Mr. Allen and Mr.

---

[1] Due to the inflammatory nature of Ms. Tomasian's affidavit testimony regarding C.D. Peacock and its individual Officers, C.D. Peacock declines to file a copy of Ms. Tomasian's affidavit with this Response. If the Court should require a copy, however, C.D. Peacock requests leave to file the affidavit under seal or submit it to chambers for in camera review by the Court.

Hunt regarding Ms. Tomasian's interview and subsequent affidavit, Mr. Allen has informed C.D. Peacock of certain correspondence between the parties. Said correspondence indicates that Mr. Hunt was aware that Ms. Tomasian would be interviewed by Ware's counsel and that he may request an affidavit as a result of this interview. (See Exhibit A to Exhibit 2: July 8, 2009 E-mail sent from Keith Allen to Keith Hunt).

On August 27, 2009, Mr. Allen sent an e-mail to Ms. Tomasian thanking her for discussing the Ware case with him, and attaching a draft affidavit for her review. Ms. Tomasian was asked to review the document for accuracy and to contact Mr. Allen if it was not accurate in any way. (See Exhibit B to Exhibit 2: August 27, 2009 E-mail from Keith Allen to Helene Tomasian). Ms. Tomasian's signed affidavit was submitted in this matter on the following day, August 28, 2009.

### C. C.D. Peacock Attempts To Secure Ms. Tomasian's Deposition

On October 27, 2009, C.D. Peacock requested that Arbitrator Klenk issue a subpoena for the deposition of Ms. Tomasian. (See Wright Decl. at ¶ 8). This request was granted, and a subpoena was issued on January 22, 2010, noticing Ms. Tomasian's deposition for February 26, 2010. (Id.). On January 26, 2010, C.D. Peacock served a copy of the subpoena on Ms. Tomasian's counsel, Keith Hunt, as well as a cover letter explaining both the necessity for Ms. Tomasian's deposition and the limited purposes for which the deposition was being requested. (Exhibit 4: January 26, 2010 Letter with attachments from Jeremy W. Stewart to Keith L. Hunt). Specifically, the letter explained that the need for Ms. Tomasian's deposition was based upon the sworn statement she submitted on behalf of Ware, which was relied upon to C.D. Peacock's detriment by both Ware and Arbitrator Klenk on summary judgment. The letter also explained that C.D. Peacock was requesting her deposition to avoid being ambushed by further defamatory

comments by Ms. Tomasian at a hearing in this matter. Id. Moreover, C.D. Peacock explicitly informed Mr. Hunt of the scope of Ms. Tomasian's deposition:

> As we have previously informed you, we intend to limit Ms. Tomasian's deposition in the Ware case to those issues presented in Ms. Tomasian's declaration.

See Id.

Despite C.D. Peacock's clear and unequivocal explanation for the need of Ms. Tomasian's deposition and the authority by which an arbitrator may issue a subpoena for deposition, Mr. Hunt refused to accept service on Ms. Tomasian's behalf. (Wright Decl. at ¶ 9). As a result, C.D. Peacock engaged the services of VTS Investigations, Inc., a company that specializes in service of process. According to VTS, they attempted to serve Ms. Tomasian in-person, at her home address, on February 2, 5, 8, 16, and 18. (Id. at 10). These attempts were unsuccessful.

On February 25, 2010, C.D. Peacock requested that Arbitrator Klenk issue a second subpoena for Ms. Tomasian's deposition, noticing her deposition for March 18, 2010. (Id. at 11). This request was granted, and C.D. Peacock engaged the services of It's Your Serve, Inc., a company that also specializes in service of process, to serve this subpoena on Ms. Tomasian. (Id.). It's Your Serve attempted to serve Ms. Tomasian on March 6, 7, 8, 10, 12, 14 and 17. (See Exhibit 5: Affidavits of Special Process Servers). It's Your Serve was likewise unable to effectuate in-person service on Ms. Tomasian, and despite the fact that they provided their contact information to the personnel at the front desk of her building, Ms. Tomasian never contacted the Special Process Servers. See Id.

On March 25, 2010, C.D. Peacock requested yet another subpoena for Ms. Tomasian's deposition, with the goal of deposing her on April 29, 2010. (Wright Decl. at ¶ 12). This request was granted, and on March 31, 2010, a revised subpoena was issued for the deposition of Ms.

-5-

Tomasian. (Id.). Due to the prior difficulties it experienced in attempting to serve Ms. Tomasian, C.D. Peacock sent copies of the March 31 subpoena to Ms. Tomasian via Federal Express, Certified U.S. Mail, in addition to attempting to serve Ms. Tomasian at her residence. (Id.).

On April 13, 2010, Amanda Wright, counsel for C.D. Peacock, attended a deposition in the matter between Ms. Tomasian and C.D. Peacock, at which time, Ms. Tomasian was also present. (Id. at 13). Counsel had a copy of the subpoena for Ms. Tomasian's deposition in the Ware matter, and was ready and able to serve the subpoena at that time, however, Ms. Tomasian's counsel, Keith Hunt, requested that C.D. Peacock not serve Ms. Tomasian with a copy of the subpoena, and further stated that he would discuss the matter with Ms. Tomasian and provide C.D. Peacock with a response regarding whether Ms. Tomasian would appear for her deposition or seek to oppose the subpoena. (Id. at ¶ 14). Based upon Mr. Hunt's representation to counsel, and as a professional courtesy, counsel for C.D. Peacock complied with Mr. Hunt's request not to effectuate in-person service of the subpoena for Ms. Tomasian's deposition. On April 21, 2010, Mr. Hunt again confirmed that he would discuss the issue with Ms. Tomasian and provide C.D. Peacock with an answer regarding her attendance and participation in a deposition in the Ware arbitration. To the contrary, Mr. Hunt did not contact or consult with C.D. Peacock regarding this issue. Rather, without any prior consultation or discussion with C.D. Peacock's counsel, he filed the instant Motion to Quash Subpoena on Ms. Tomasian's behalf on Tuesday, April 27, 2010 – two days prior to her scheduled deposition, and just two weeks prior to the scheduled hearing (which has since been rescheduled for a later date).

## II. ARGUMENT

The subpoena issued by Arbitrator Timothy Klenk for the deposition of Helene Tomasian in this matter should be upheld as valid and enforceable. Ms. Tomasian injected herself into the

Ware arbitration and unequivocally consented to participate in the discovery process when she was voluntarily interviewed and provided an affidavit on behalf of Ware. Moreover, both Ms. Tomasian, and her counsel, were aware that C.D. Peacock was seeking her deposition, and that the scope would be limited to the content of the affidavit Ms. Tomasian signed on Ware's behalf.

### A. C.D. Peacock Effectuated Proper Service On Ms. Tomasian

The Ware arbitration is pending before the AAA, which generally follows the Federal Rules of Civil Procedure. C.D. Peacock made every effort to comply with Rule 45 of the Federal Rules of Civil Procedure regarding proper service on Ms. Tomasian. Indeed, C.D. Peacock made over thirteen attempts to serve Ms. Tomasian in person, before serving her via Federal Express and Certified U.S. Mail.

Ms. Tomasian cannot now claim that C.D. Peacock has failed to properly serve her in person, when her own evasive tactics and a request by her counsel, are responsible for this alleged defect. Indeed, given that Ms. Tomasian has been evasive, it was sufficient service of process to leave the subpoena with her doorman, who signed for the Federal Express package, especially given that it is abundantly clear that she received the subpoena (and therefore knew to oppose it by the instant Motion). See Hartford Fire Ins. Co. v. Perinovic, 152 F.R.D. 128, 130 (N.D. Ill. 1993) (upholding service of process under Rule 4(d)(1) of the Federal Rules of Civil Procedure on doorman of residence of defendant who was evading service). Under Rule 45, so long as the service "reasonably insures actual receipt of the subpoena by the witness," then leaving it with the doorman or serving the subpoena via Certified Mail is sufficient. See Abbott v. Kidder, Peabody & Co., 1997 U.S. Dist. LEXIS 8500 at *9 (N.D. Ill. 1997) (upholding service of process by leaving subpoena between the windshield and wiper blades of subpoenaed party's car) (citing King v. Crown Plastering Corp., 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (holding that Rule 45's language does not require "in-hand service", but only service in a manner that

"reasonably insures actual receipt of the subpoena by the witness")); See also, Doe v. Hersemann, 155 F.R.D. 630, 630-631 (N.D. Ind. 1994) (subpoena may be served by certified mail, as neither text nor purpose of Rule 45 requires personal service).

Ms. Tomasian also makes much ado about C.D. Peacock's alleged "failure" to pay witness or mileage fees as required by the Federal Rules of Civil Procedure. C.D. Peacock has not yet tendered such sums to Ms. Tomasian, however, it has every intention of complying with its obligations under the Federal Rules of Civil Procedure, including paying Ms. Tomasian the fees prescribed therein. To the extent the Court determines that this was a defect in the subpoena issued for Ms. Tomasian's April 29, 2010 deposition, C.D. Peacock will gladly remedy this defect in a subsequent, updated subpoena for Ms. Tomasian's deposition.[2] (See Exhibit 6: Draft Letter and Subpoena for Deposition of Helene Tomasian).

### B. Arbitrators Have The Power To Issue Subpoenas For Pre-Hearing Depositions

C.D. Peacock's need for the pre-hearing deposition of Ms. Tomasian was created by Ms. Tomasian's own doing, when she voluntarily involved herself in the Ware arbitration and consented to participate in discovery in this matter. Ms. Tomasian agreed to be interviewed by Ware's counsel and signed a sworn statement, with her counsel's knowledge, that was used as evidence against C.D. Peacock. Moreover, C.D. Peacock understands that Ms. Tomasian intends to appear at the arbitration hearing – either in response to subpoena by Ms. Ware or voluntarily - to testify on behalf of Ms. Ware. Ms. Tomasian cannot now conceal or disclaim her consent to involvement in this matter in order to avoid being deposed by C.D. Peacock. Ms. Tomasian's

---

[2] Because the date for the most recent subpoena has passed, C.D. Peacock will be required to ask Mr. Klenk to issue an updated subpoena, setting an upcoming date. C.D. Peacock has attached a draft subpoena for this Court's review, which includes a letter limiting the scope of the subpoena and will include the appropriate witness fees.

-8-

Motion to Quash Subpoena should be denied, and she should be required to attend a deposition conducted by C.D. Peacock on the issues set forth in her affidavit.

> **1. At A Minimum, Arbitrators Have The Implied Authority To Subpoena The Deposition Of A Third Party That Has Consented To Participate In Discovery**

The Seventh Circuit Court of Appeals has not yet addressed the issue of whether arbitrators are authorized to issue subpoenas for pre-hearing discovery depositions to third parties. The approach most appropriate in this case is to recognize that arbitrators have authority to subpoena a third party for a pre-hearing deposition, particularly where, as here, the third party at issue has already voluntarily involved herself in the arbitration. See Amgen, Inc. v. Kidney Center of Del. County, Ltd., 879 F. Supp. 878, 880 (N.D. Ill. 1995) ("While the statute appears to allow an arbitrator to summon a third person only to testify at trial, as opposed to a pretrial discovery deposition, courts have held . . . that implicit in the power to compel testimony and documents for purpose of a hearing is the lesser power to compel such testimony and documents for purposes prior to hearing.")), rev'd on other grounds, 1996 U.S. App. LEXIS 28250 (7th Cir. 1996); see also In re Security Life Ins. Co., 228 F.3d 865, 870-71 (8th Cir. 2000) ("We thus hold that implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing."); and see Meadows Indemnity Co., Ltd. v. Nutmeg Ins. Co., 157 F.R.D. 42, 45 (M.D. Tenn. 1994) ("The power of the panel to compel production of documents from third-parties for the purposes of a hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing.").

In discussing Judge Gettleman's order enforcing an arbitrator's authority in the Amgen case, the Seventh Circuit noted, the FAA "gives arbitrators broad authority to order the collection of evidence relevant to the arbitration. Although it does not give the arbitrators themselves any

power to enforce these orders, it does give the district courts authority to compel compliance with them." Amgen, Inc. v. Kidney Center of Delaware County, Ltd., 95 F.3d 562, 563 (7th Cir. 1996).

Arbitrator Timothy Klenk, who is duly authorized to practice law in the State of Illinois, issued three subpoenas, including the subpoena in question, for Ms. Tomasian's deposition. Arbitrator Klenk issued the subpoenas to depose Ms. Tomasian – whom he has referred to as Ware's "key witness" – after C.D. Peacock expressed its concern that it would be greatly prejudiced if it were required to question Ms. Tomasian for the first time at the hearing in this matter. (See Wright Decl. at ¶ 7). C.D. Peacock asks that this Court, similar to the approaches taken by the Amgen, Security Life, and Nutmeg Ins. Co. courts, recognize that arbitrators have the implicit authority to issue subpoenas for pre-hearing discovery in an arbitral forum, especially in circumstances in which a non-party has consented to participate in discovery. The alternative approach would be to force C.D. Peacock to be ambushed by Ms. Tomasian's potentially inflammatory comments at the hearing, and in the presence of the arbitrator, without the ability to adequately prepare for her testimony or have potential rebuttal witnesses available. To limit an arbitrator's authority to issue a subpoena under these circumstances, would run counter to the Seventh Circuit's recognition of the strong federal policy favoring arbitration.

### 2. Ms. Tomasian's Sworn Statement Created A Special Need For Her Deposition In This Matter

Ms. Tomasian relies on Matria Healthcare, LLC v. Duthie, 584 F. Supp. 2d 1078 (N.D. Ill. 2008) for the proposition "[a]n arbitrator's authority is strictly limited to that granted by the Federal Arbitration Act ("FAA")." (See Doc. No. 1 at pp. 3-4). Ms. Tomasian further argues that the FAA does not authorize arbitrators to issue subpoenas for discovery depositions against third parties. (See Id.) (citing COMSAT Corp. v. National Science Foundation, 190

F.3d 269 (4th Cir. 1999)). Both <u>Matria</u> and <u>COMSTAT</u> are readily distinguishable from the instant action.

In <u>Matria</u>, the Court summarized it's holding as follows, "In sum, neither the text nor the history of § 7 of the FAA supports Matria's argument that a non-party to an arbitration can be compelled to participate in discovery <u>without his consent</u>." <u>Matria</u>, 584 F. Supp. 2d at 1083 (emphasis added). Ms. Tomasian motion neglects to inform the Court that she <u>did</u> <u>consent</u> to participate in discovery in the <u>Ware</u> matter. Indeed, as discussed at length above, she consented to be interviewed and signed a sworn statement, with her counsel's knowledge, that was used as affirmative evidence against C.D. Peacock.

In addition to consenting to participate in discovery in this case, a special need exists for Ms. Tomasian deposition. The <u>Matria</u> Court noted that the <u>COMSTAT</u> decision "contemplated that a party might, under unusual circumstances, petition the district court to compel pre-arbitration discovery upon a showing of special need or hardship." <u>Id.</u> at 1080. Although the <u>COMSTAT</u> Court did not prescribe what circumstances would qualify as "unusual," surely the instant situation, in which Ms. Tomasian signed an affidavit on behalf of Ware that makes sweeping accusations (much of which appears to be hearsay, at best) against the Company, its Officers, and her co-workers, and has subsequently refused to allow C.D. Peacock to depose her regarding the same, would be sufficient. As referenced above, Ms. Tomasian has been referred to by the Arbitrator as the "key witness" in Ms. Ware's case, despite the fact that her employment with C.D. Peacock ended approximately five months before the alleged adverse action against Ware. (<u>See</u> Wright Decl. at ¶ 7). These are factual issues that C.D. Peacock must resolve prior the hearing. Indeed, Ware's own counsel has repeatedly indicated that he has no

-11-

objection to the deposition. Thus, the only delay in this regard has been caused by Ms. Tomasian's evasive tactics.

Ms. Tomasian also claims that the "FAA arguably restricts an arbitrator's subpoena power to those situations in which the non-party has been called to appear in the physical presence of the arbitrator and/or hand over documents at that time." See Doc. No. 1 at pp. 4-5 (citing Hay Group, Inc. v. EBS Acquisition Corp., 360 F.3d 404 (3rd Cir. 2004)). Hay Group is also readily distinguishable from the instant litigation. In Hay Group, a former employer sought to subpoena its former employee's new employers (one was a non-party) in order to ascertain the extent to which the former employee had violated a non-solicitation agreement. See 360 F.3d 404. In other words, the employer in Hay Group was fishing for information from parties that had not involved themselves in the arbitration at issue. In the instant action, C.D. Peacock is not casting a net for a broad base of information, nor is it seeking to depose a disinterested, non-consenting third party. Rather, it seeks Ms. Tomasian's deposition for the sole purpose of questioning her about the inflammatory comments she made against C.D. Peacock in her signed affidavit, which she voluntarily submitted for the purpose of supporting Ms. Ware's case.

### 3. Ms. Tomasian's Affidavit Submitted In The Ware Matter Is The Basis Of The Arbitrator's Subpoena Power

Ms. Tomasian devotes nearly two pages of her Motion to Quash to arguing that she did not agree to arbitration pursuant to contract. In support, she attaches a copy of her self-"modified" Arbitration Agreement, and an excerpt from the Deposition of Frank Vrkljan, the Chief Financial Officer of C.D. Peacock, that was taken as part of her own action against C.D. Peacock. At the outset, Ms. Tomasian fails to inform the Court that the determination of whether she had a valid and enforceable arbitration agreement with C.D. Peacock is presently pending before Judge William Hibbler, who recently ordered that she respond to C.D. Peacock's Motion

to Compel Arbitration by June 11, 2010. (See Exhibit 3). Thus, Ms. Tomasian's attempt to argue the validity of the Arbitration Agreement between her and C.D. Peacock in this Motion to Quash Subpoena is misplaced and inappropriate. Additionally, Mr. Vrkljan was deposed on April 13, 2010, for the limited purposes of discovering information that would allow Ms. Tomasian to respond to C.D. Peacock's Motion to Compel Arbitration, not for determining whether Ms. Tomasian had consented to participate in discovery in the Ware matter.[3] In short, Ms. Tomasian inappropriately attempts to have this Court resolve, or at least weigh in on, an issue that is properly before Judge Hibbler. C.D. Peacock requests that this Court disregard her arguments regarding the validity of her own Arbitration Agreement, as they are nothing more than a red herring with regard to the instant matter. Her argument that she never consented to participation in arbitration are particularly disingenuous here, where she so readily injected herself into Ms. Ware's arbitration via her affidavit and her willingness to testify at the upcoming hearing.

The sole issue in this matter is whether Arbitrator Klenk has the power to issue – and whether the Arbitrator and/or this Court has the power to enforce - a subpoena for Ms. Tomasian's deposition in the Ware matter. As demonstrated above, the answer is yes, based upon C.D. Peacock's valid service of the subpoena and Ms. Tomasian's voluntary consent to participate in discovery.

Simply stated, Ms. Tomasian's Motion to Quash is disingenuous, misleading, and serves as yet another attempt by Ms. Tomasian to unfairly prejudice C.D. Peacock in both the Ware matter, and as evidenced by her lengthy arguments regarding her own Arbitration Agreement, her own pending litigation. By consenting to an interview, signing an affidavit, and indicating

---

[3] Notably, C.D. Peacock reserved signature of the Deposition Transcript of Frank Vrkljan, yet it had not yet received its copy of the transcript prior to the filing of Ms. Tomasian's motion. Thus, Mr. Vrkljan's deposition transcript is not yet complete and accurate.

-13-

that she will testify at the upcoming hearing on Ms. Ware's behalf, Ms. Tomasian readily and wholeheartedly agreed to participate in discovery for this arbitration, and should therefore be required to appear at a properly noticed deposition.

### III. CONCLUSION

Wherefore, having fully responded to Helen Tomasian's Motion to Quash, Respondent C.D. Peacock requests that the same be denied; that C.D. Peacock be awarded court costs and reasonable attorneys' fees in connection with responding to this motion; and that C.D. Peacock be awarded such other and further relief to which it is justly entitled.

Respectfully submitted,

*s/Jeremy W. Stewart*
Jeremy W. Stewart

Amanda Helm Wright ARDC# 6276200
Jeremy W. Stewart ARDC# 6293884
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL 60601
312.372.5520
awright@littler.com
jwstewart@littler.com

Dated: May 4, 2010

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

> Keith L. Hunt
> Hunt & Associates, P.C.
> Three First National, P.C., Suite 2100
> Chicago, Illinois 60602
> Khunt@huntassoclaw.com

I further certify that on May 4, 2010, I served the foregoing via First Class Mail on the following:

> Keith A. Allen (attorney for Gloria Ware)
> Mandell Menkes, LLC
> 333 W. Wacker, Suite 300
> Chicago, Illinois 60606

> *s/Jeremy W. Stewart*
> Jeremy W. Stewart

Jeremy W. Stewart
LITTLER MENDELSON, P.C.
200 North LaSalle Street, Suite 2900
Chicago, IL 60601
312.372-5520
jwstewart@littler.com