# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Arbitration Between ) <br> ) <br> **GLORIA WARE,** ) <br> ) <br>     Claimant, ) <br> ) <br>     v. ) <br> ) <br> **C.D. PEACOCK, INC.** ) <br> ) <br>     Respondent. ) | Case No. 10 C 2587 <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This is an action to quash an arbitration subpoena directed to non-party Helene Tomasian for her deposition. Ms. Tomasian's motion to quash subpoena (Doc. 1) has been referred to this Court for resolution. For the reasons explained below, Ms. Tomasian's motion is granted.

## Background

Helene Tomasian, a non-party to an arbitration between Gloria Ware and C.D. Peacock, Inc., moves to quash an arbitrator's subpoena for her pre-hearing deposition. Ms. Tomasian and Ms. Ware are former employees of C.D. Peacock. On November 19, 2008, Ms. Ware filed a complaint with the American Arbitration Association against C.D. Peacock, alleging that she was discriminated against on the basis of her age, race, and color when she was demoted from store manager to assistant store manager in July 2008. After conducting some discovery, C.D. Peacock filed a summary judgment motion as to all claims filed by Ms. Ware in the arbitration. Ms. Ware's response to C.D. Peacock's summary judgment motion included an affidavit by Ms. Tomasian. On September 7, 2009, Arbitrator Timothy Klenk denied C.D. Peacock's request for summary judgment based "in large part on an affidavit of Helen Tomasian." (Doc. 12, Exh. 2 at ¶ 7). C.D. Peacock adds that Arbitrator Klenk has referred to Ms. Tomasian as Ms. Ware's key witness. On October 27, 2009, C.D. Peacock requested that Arbitrator Klenk issue a subpoena for the

deposition of Ms. Tomasian. That request was granted and the first of three subpoenas for Ms. Tomasian's deposition was issued.

On September 11, 2009, Ms. Tomasian filed her own action in this district against C.D. Peacock and Jewelcor, Inc., alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 as well as a violation of the Equal Pay Act. Tomasian v. C.D. Peacock, Case No. 09 C 5665. Ms. Tomasian's case is pending before District Judge William J. Hibbler. Defendants have moved to stay and compel arbitration of Ms. Tomasian's claims on the ground that C.D. Peacock and Ms. Tomasian have a binding arbitration agreement to submit disputes arising out of Ms. Tomasian's employment to binding arbitration in lieu of litigating in a court of law. Ms. Tomasian's response to C.D. Peacock's motion to stay and compel arbitration is due on or before June 11, 2010.

## Discussion

Ms. Tomasian now seeks to quash the March 31, 2010 subpoena for her deposition issued by Arbitrator Klenk. As a non-party to the arbitration between Ms. Ware and C.D. Peacock, Ms. Tomasian argues that she cannot be compelled to participate in a deposition without her consent. C.D. Peacock argues that arbitrators have implied authority to subpoena the deposition of a non-party that has consented to participate in discovery, as Ms. Tomasian has in the Ware arbitration.

"An arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited by the Federal Arbitration Act (FAA)." Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 406 (3rd Cir. 2004). Section 7 of the FAA provides:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, *may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case*. . . . [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, *upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators*, or punish said person or

persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).

The Seventh Circuit has not addressed the issue of whether an arbitrator is authorized to subpoena pre-hearing discovery from non-parties independent of the attendance of the non-party before the arbitrator and whether district courts are authorized to enforce such subpoenas under § 7 of the FAA. The other Circuits are split on the matter. In Hay Group, the Third Circuit considered whether a non-party could be compelled to produce documents in advance of an arbitration hearing. The Third Circuit, in an opinion by then circuit judge Samuel A. Alito, held that "Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time." Hay Group, 360 F.3d at 407. Like the Third Circuit, the Second Circuit has held that "section 7 does not enable arbitrators to issue pre-hearing document subpoenas to entities not parties to the arbitration proceeding." Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 212 (2d Cir. 2008).

The Fourth Circuit has similarly held that Section 7 does not empower an arbitrator to issue pre-hearing discovery subpoenas to non-parties:

> Nowhere does the FAA grant an arbitrator the authority to order non-parties to appear at depositions, or the authority to demand that non-parties provide the litigating parties with documents during prehearing discovery. By its own terms, the FAA's subpoena authority is defined as the power of the arbitration panel to compel non-parties to appear "before them;" that is, to compel testimony by non-parties at the arbitration hearing.

COMSAT Corp. v. National Science Foundation, 190 F.3d 269, 275 (4th Cir. 1999). The Fourth Circuit contemplated a "special need" exception under which a "party might, under unusual circumstances, petition the district court to compel pre-arbitration discovery upon a showing of special need or hardship." Id. at 276. The COMSAT court did not define "special need," but

observed that "at a minimum, a party must demonstrate that the information it seeks is otherwise unavailable." Id. The Eighth Circuit has taken the opposite view and held that "implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing." In the Matter of Arbitration Between, Sec. Life Ins. Co. of Am., 228 F.3d 865, 870 -71 (8th Cir. 2000); see also Am. Fed'n of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.), 164 F.3d 1004, 1009 (6th Cir. 1999) (declining to reach the question of whether an arbitrator may subpoena a third party for a discovery deposition relating to a pending arbitration proceeding but noting that the FAA authorizes an arbitrator to compel the production of documents from third parties prior to the hearing).

The Court finds that the Second and Third Circuit's position is the better reasoned view of the statute and holds that the plain language of Section 7 of the FAA does not authorize arbitrators to issue subpoenas for depositions of non-parties outside the physical presence of the arbitrator. C.D. Peacock argues that Ms. Tomasian voluntarily consented to participate in discovery in the Ware arbitration by agreeing to an interview with Ware's counsel, signing an affidavit on behalf of Ms. Ware, and indicating that she will testify at the upcoming arbitration hearing – either in response to a subpoena by Ms. Ware or voluntarily – on Ms. Ware's behalf. C.D. Peacock's consent argument is unavailing. It is true that a non-party may consent to participating in discovery in an arbitration proceeding, thus obviating the need for a subpoena. But it can not be said that Ms. Tomasian consented to a deposition by C.D. Peacock's counsel by agreeing to be interviewed by Ware's counsel, signing an affidavit, and indicating she will testify at the upcoming arbitration hearing. Ms. Tomasian's agreement to participate in the Ware arbitration is limited to those activities. By filing her motion to quash the subpoena, Ms. Tomasian has clearly objected, not consented, to her deposition being taken in the Ware arbitration. Hoping to fit within the Fourth Circuit's "special need" exception, C.D. Peacock next argues that a "special need" exists for Ms.

-4-

Tomasian's deposition because she signed an affidavit on behalf of Ms. Ware making accusations against the company, its officers, and her co-workers and the arbitrator has referred to her as the "key witness" in Ms. Ware's case. Because Section 7 contains no discovery deposition exception for affiants or key witnesses, the Court rejects this argument.

C.D. Peacock says that it will be greatly prejudiced if it is required to question Ms. Tomasian for the first time at the arbitration hearing. C.D. Peacock fears that it will be "ambushed by Ms. Tomasian's potentially inflammatory comments" without the ability to adequately prepare for her testimony or have potential rebuttal witnesses available. (Doc. 12 at 10). The possible prejudice to C.D. Peacock is exaggerated because the substance of Ms. Tomasian's testimony is already available in her affidavit. Moreover, C.D. Peacock's suggestion that it will be unfairly "ambushed" at the arbitration hearing ignores the fact that C.D. Peacock was not forced to arbitrate Ms. Ware's claims; it willingly elected to offer its employees arbitration agreements. In fact, Ms. Ware initially filed her claims in this court. Ware v. C.D. Peacock, Inc., Case No. 08 C 6145. Ms. Ware dismissed her federal action only after C.D. Peacock "brought to her counsel's attention that Ware had entered into an agreement with C.D. Peacock to arbitrate her claims." (Doc. 12 at 2). By voluntarily entering into arbitration with Ms. Ware, C.D. Peacock could not have reasonably expected to obtain full-blown discovery from third parties. "Parties to a private arbitration agreement forego certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their disputes. . . . A hallmark of arbitration–and a necessary precursor to its efficient operation–is a limited discovery process." COMSAT Corp., 190 F.3d at 276; see also Smith v. American Arbitration Ass'n, Inc., 233 F.3d 502, 506 (7th Cir. 2000) (stating "[t]he choice of arbitration is a choice to trade off certain procedural safeguards . . . against hoped-for savings in time and expense (other than the expense of the tribunal), a measure of procedural simplicity and informality, and a differently constituted tribunal.").

Finally, C.D. Peacock argues that limiting an arbitrator's authority to issue a deposition subpoena under the circumstances of this case would "run counter to the Seventh Circuit's recognition of the strong federal policy favoring arbitration." (Doc. 12 at 10). Contrary to C.D. Peacock's position, "[t]here is no such policy [favoring arbitration]." Gotham Holdings, LP v. Health Grades, Inc., 580 F.3d 664, 665 (7th Cir. 2009). Rather, "the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. . . . Federal policy favors arbitration only in the sense that it favors contracts in general." Id. If C.D. Peacock wanted to have the option of third-party depositions, it should not have agreed to arbitration. Having concluded that the arbitrator does not have the authority to require Ms. Tomasian to testify at a deposition outside the physical presence of the arbitrator, the Court need not reach Ms. Tomasian's challenges to the sufficiency of service and the witness and mileage fees issue.

## Conclusion

For these reasons, non-party Helene Tomasian's Motion to Quash Subpoena (Doc. 1) is granted.

E N T E R:

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: May 7, 2010**